# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE  DIVISION

PISAURO, ET AL                                        CIVIL ACTION NO. No. 15-02832

VERSUS                                                    JUDGE ELIZABETH FOOTE

SILVIA, ETA L                                            MAGISTRATE JUDGE CAROL B. WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is an unopposed Motion To Dismiss for Failure To State A Claim Upon Which Relief Can Be Granted, Failure To Exhaust Administrative Remedies And For Lack Of Standing, And Motion For More Definite Statement, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(e), filed by Defendants, the City of Scott, Officer Larry Williams, individually and in his official capacity as a Police Officer for the City of Scott, and Chief Chad Leger, individually and in his official capacity as Chief of Police of the City of Scott, against Plaintiff Bobbie McGoldrick Pisauro ("Pisauro"), individually and on behalf of her minor child, Taylor Shae McGoldrick ("McGoldrick") (collectively referred to as "Plaintiffs") [Rec. Doc. 5].

In their motion, Defendants contend: (1) Plaintiffs have failed to allege facts sufficient to state a claim for which relief can be granted  under SPED, the ADA, and/or Title VI of the Civil Rights Act of 1964 against the City of Scott and Officer Williams, individually and in his official capacity as a Police Officer for the City of Scott; (2) Plaintiffs have failed to allege facts sufficient to state a claim under 42 U.S.C. § 1983 against Chief Leger, individually, and/or against the City of Scott; and, (3) Plaintiff Pisauro, has stated no factual allegations that she possessed the procedural capacity to file suit on behalf of the minor child, McGoldrick, pursuant to La. C.C.P. art 4262. Alternatively, Defendants contend that Plaintiffs should amend their Petition to state facts with

specificity to show how and why they are entitled to relief.  Plaintiffs have filed no opposition to the motion to dismiss.[1] The Fifth Circuit holds that courts may grant an unopposed motion as long as the motion has merit. *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

## I. Factual Background

On November 17, 2015, Plaintiffs filed a verified Petition in this action in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana. *R. 1-1*. Defendants removed the suit to this Court on December 12, 2015.  *R.1*. According to the Petition, on November 22, 2014, McGoldrick, a thirteen–year old student at Scott Middle School, was in the classroom of her teacher, Cynthia Silvia. Silvia called the on-campus police officer, Officer Williams, on her cell phone to come to her classroom to "confront" McGoldrick. After arriving at Silvia's classroom, Williams handcuffed McGoldrick and "forced" her into the hallway. Williams then "bumped" her in the back to the front of the school where the buses loaded while cursing at her. Williams refused to allow McGoldrick to call her mother and made her wait in handcuffs until the buses arrived at the school.

After McGoldrick arrived at home, Pisauro went to the City of Scott Police Department and spoke with Chief Leger, who called in Officer Williams. Officer Williams "admitted what he had done." Leger refused to issue a report on the incident and threatened Pisauro. Two weeks later, the principal of Scott Middle School, Candy Tweedel Kelly, contacted Pisauro by telephone "to apologize for what had happened."

Plaintiffs allege McGoldrick has suffered irreparable damages including but not limited to Post Traumatic Stress Disorder, depression, self-mutilation and reversal of her psychological

---

[1] Under Local Rule 7.5, a party's failure to file a response to a motion within the time allowed for (21 days) is construed as non-opposition to the motion.  Any opposition to Defendants' motion was due by January 22, 2016.

treatment from the trauma she suffered as a child when her birth mother involved her in sex trafficking scheme. Plaintiffs also allege Pisauro has suffered marital problems as a result of McGoldrick's psychological problems, "as well as other damages to be proven at the trial of this matter."

## II. Legal Standards

*Rule 12(e) Motion for More Definite Statement*

"A Rule 12(e) motion is disfavored. Rule 12(e) provides as follows: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Under the liberal pleading approach of the federal rules, plaintiffs need only make a short and plain statement of the claim showing that they are entitled to relief. *Fed.R.Civ.P. 8(a). Burks v. Bogalusa City School Bd.*, 1999 WL 64947, at *3 (E.D.La.,1999)*.

*Rule 12(b)(1) and 12(b)(6) Motions to Dismiss*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). A Rule 12(b)(1) motion to dismiss is the proper method with which to bring a motion to dismiss for lack of standing. *Harrison v. Safeco Ins. Co. of America,* 2007 WL 1244268, at *3 (E.D.La. Jan. 26, 2007) (citing *Ramming,* 281 F.3d at 161). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming,* 281 F.3d at 161. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.*

The standard for review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *Harrison,* 2007 WL 1244268, at *3 . When deciding

a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *In re Katrina Breaches Litig.* at 205 (quoting *Twombly,* at 555).

*III. Analysis*

Plaintiffs' Petition implicates overlapping federal statutes addressing discrimination on the basis of disability. The  related statutory schemes at issue here are: (1) the Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134; and (3) the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400–1491.

*1. Section 504 of the Rehabilitation Act and the ADA*

Plaintiffs  allege in Paragraph 32 of the Petition that all Defendants are liable under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), SPED and the American with Disabilities Act ("ADA"). *R. 1-1, ¶ 32*. Title II of the ADA simply extends Section 504 to all programs and services provided by state and local governments:

> The first purpose [of title II of the ADA] is to make applicable the prohibition against discrimination on the basis of disability, currently set out in regulations implementing section 504 of the Rehabilitation Act of  1973, to all programs, activities, and services provided or made available by state and local governments or instrumentalities or agencies thereto.

*Hope v. Cortines*, 872 F.Supp. 14, 20-21 (E.D.N.Y.,1995) (citing H.R.Rep. No. 101–485(II), 101st

4

Cong., 2d Sess. 84 (1990)). When a Section 504 claim is made together with a Title II ADA claim, as in this case, most courts consider them together as they provide the same remedies, procedures and rights. 42 U.S.C. § 12133; s*ee Bennett–Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The Fifth Circuit reviews Section 504 claims under the standard applicable to ADA claims. *See, e.g .Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir.2005) (en banc).

"To establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which [the school district] is responsible; and (3) that such exclusion or discrimination is because of her disability." *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 292 (5th Cir.2012) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir.2004)). Both ADA claims and claims brought under Section 504  require the three elements listed above with only Section 504 requiring the fourth element that  the relevant program or activity be receiving Federal financial assistance.  *S.S. v. Eastern Kentucky University*, 532F. 3d 445 (6th Cir. 2008). "The only material difference between the two provisions lies in their respective causation requirements." *Bennett*, 431 F.3d at 454. Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "the sole reason" for the challenged action. *Id*. In addition, "[a] plaintiff asserting a private cause of action for violations of the ADA [and the Rehabilitation Act] ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir.2002).

To show disability discrimination in the educational context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." *Bennett*, 431 F.3d at 454. The plaintiff must show "that a school district has refused to provide reasonable

accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir.1983). "[F]acts creating an inference of professional bad faith or gross misjudgment" are necessary to substantiate a cause of action for intentional discrimination under Section 504 or ADA against a school district. *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir.2010); *Bennett*, 431 F.3d at 455. Allegations that educational authorities "exercised professional judgment," even mistakenly, do not suffice unless they "depart grossly from accepted standards among educational professionals." *Bennett*, 431 F.3d at 454–55. The ADA and Section 504 "do not create general tort liability for educational malpractice." *D.A.*, 629 F.3d at 454.

Plaintiffs' Petition includes no specific allegations as to what McGoldrick's claimed disability is, nor are there any allegations to show that McGoldrick was "otherwise qualified" for any 504 program. The only allegation which remotely addresses any such need is Paragraph 4 which states:

> Despite Petitioner's objections, Defendant Lafayette Parish School Board determined that [McGoldrick] would be placed into a couple of 'regular' classrooms instead of the 'special needs' classrooms she had previously attended.

*R. 1-1,¶ 4.*

As to Plaintiffs' 504 and ADA claims against Officer Williams, Chief Leger and the City of Scott, it is axiomatic that police officers do not have a responsibility in identifying special education protocol at public schools, unless it is part of their agreement with the school district. In *Hoskins v. Cumberland County Bd. of Educ.*, 2014 WL 7238621, at *14 (M.D.Tenn.,2014), the parents of a special education student who was handcuffed by the school police for 45 minutes filed suit under Section 504 and the ADA. The court stated that, while the Petition was ambiguous as to whether plaintiffs asserted a claim against the police officer, "it does not appear to be even arguable that

Defendant Tollett, a police officer, had any responsibility for identifying or creating an individualized plan for [the student] under Section 504, the ADA or the IDEA." *Id.* Likewise, in this case, Plaintiffs' Petition fails to state a viable claim for violation of Section 504 or the ADA against Officer Williams, Chief Leger and/or the City of Scott for any responsibility in identifying McGoldrick as a special needs student.

Plaintiffs also assert in Paragraph 34 of their Petition a cause of action under "SPED".  In order to allege a claim for special education and related services ("SPED"), McGoldrick must establish that she has been evaluated and found eligible for one or more of the disabilities listed in the Individuals with Disability Education Improvement Act ("IDEA"). Plaintiffs' Petition provides no factual allegations to support any such entitlement.

Defendants further assert that Plaintiffs have failed to exhaust their administrative remedies under the IDEA. IDEA's exhaustion requirement permits states and local agencies to employ their educational expertise, "affords full exploration of technical educational issues, furthers development of a complete factual record and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992) (citing *McKart v. United States*, 395 U.S. 185, 193–95 (1969)); *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 112 (2d Cir. 2004) (quoting *Hoeft* at 1303). The failure to exhaust such administrative procedures deprives the court of subject matter jurisdiction. *Hoeft*, 967 F.2d at 1302. Since claims under the Rehabilitation Act are bound by IDEA's exhaustion requirement, *a fortiori*, claims under the ADA should be likewise bound." *Hope*, 872 F.Supp. at 21. "The ADA is bound by IDEA's exhaustion requirement for claims seeking relief available under IDEA despite the fact that a plaintiff generally need not exhaust administrative remedies before pursuing an ADA claim unrelated to IDEA." *Id.*   Plaintiffs'

7

Petition contains no allegation that they have in fact exhausted their administrative remedies under IDEA.

*2. Title VI*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "[O]nly public and private entities can be held liable under Title VI." *Price ex rel. Price v. La. Dep't of Ed.*, 329 F. App'x 559, 561 (5th Cir.2009).

Here, because only public and private *entities* receiving federal funds can be held liable under Title VI, Plaintiffs have failed to state a Title VI claim against the individual defendants, Officer Williams and Chief Leger. Thus, the claims against them should be dismissed. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir.2003) ("It is beyond question ... that individuals are not liable under Title VI."); *see also United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1044 n. 9 (5th Cir.1984) (noting that "Title VI requires that the public bodies or private entities receiving the benefits of any such loan refrain from racial discrimination.").

As to the City of Scott, Plaintiffs must allege that the City itself engaged in intentional discrimination. *Canutillo Independent School Dist. v. Leija*, 101 F.3d 393, 397 (5th Cir. 1996) ("To receive compensatory damages, a Title VI plaintiff must prove discriminatory intent."). Thus, the City of Scott cannot be liable absent proof that it actually participated in discriminatory conduct. Plaintiffs' Petition provides no allegations that the incident at issue was due to racial discrimination, and therefore, fails to allege a plausible Title VI cause of action against the City of Scott.

*3. 42 U.S.C. § 1983*

To state a claim pursuant to § 1983, a plaintiff must claim a violation of a right secured by

the Constitution or laws of the United States and demonstrate the alleged deprivation was committed by a person acting under color of state law. *See* 42 U.S.C. § 1983.

Plaintiffs do not specifically allege a cause of action under Section 1983, but have sued Officer Williams and Chief Leger in their personal capacities. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

*1. Officer Williams and Chief Leger*

As to Officer Williams, Plaintiffs allege that McGoldrick was "handcuffed" by Officer Williams and that he "continued to push [McGoldrick] down the hallway by bumping his stomach against her back all the way to the front of the school...."*R. 1-1, ¶¶ 8-11.* Plaintiffs claim that Officer Williams "was negligent ... [by] [u]sing excessive force on a minor student." *Id. at ¶ 28.* Defendants contend that "to the extent that plaintiffs make any claim of false arrest and/or use of excessive force against the minor child" such a claim is made against Officer Williams only and not Chief Leger. *R. 1-1, ¶ 28.*

In Paragraphs 15 through 17 of the Petition, Plaintiffs allege that Chief Leger "refused to issue a report on the incident, then threatened Petitioner [Pisauro]." *R. 1-1, ¶¶ 15 - 17.* In Paragraph 29 of the Petition, Plaintiffs generally allege that Chief Leger "failed to follow department regulations; failed to properly supervise a subordinate employee; failed to file a proper report of the incident; failed to serve the needs of the public as his position requires; and failed to act in a professional manner." *R. 1-1, ¶ 29.*

"Section 1983 does not create supervisory or *respondeat superior* liability." *Id.* at 742. "For a police chief [such as Chief Leger] to be held liable under § 1983 there must be some connection

between the chief's action and the alleged constitutional violation.  The plaintiff must show that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

Plaintiffs fail to set forth any specific facts related to Chief Leger, much less any "specific conduct giving rise to a constitutional violation" attributable to Chief Leger in his individual capacity. Rather, Plaintiffs' allegations in Paragraph 29 are bare assertions against Chief Leger which list the elements of a constitutional claim for supervisor liability. Such "[t]hread bare recitals of the elements of a cause of action, supported by mere conclusory statements do not establish facial plausibility." *Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014).

Plaintiffs also allege claims against Chief Leger and Officer Williams in their official capacities. A judgment in a § 1983 lawsuit against an officer in his official capacity imposes liability against the entity he represents. Such suits are "only another way of pleading an action against an entity of which an officer is an agent."  *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005). Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Webster v. City of Houston*, 735 F.2d 838 (5th Cir.1984). When the municipality itself is a defendant in the litigation, as in this case, claims against specific individuals in their official capacities are redundant, and courts in this Circuit have found it is appropriate to dismiss them. *See, e.g., Deshotels v. Village of Pine Prairie*, 2012 WL 1712358, at *4 (W.D.La.,2012) (citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir.1996). Accordingly, the claims against Chief Leger and Officer Williams in their official capacities should be dismissed.

*ii. City of Scott*

Municipal liability under section 1983 requires proof of three elements: (1) a  policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)). While a municipality cannot be held liable under § 1983 solely under the doctrine of *respondeat superior*, a municipality may incur such liability for its non-policy-making employees' acts when a municipal policy of hiring or training causes those acts. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *Id*.

Plaintiffs' Petition does  not reference any evidence concerning the procedures used to train the officers, the officers' qualifications, or direct references to the particular inadequacies of their training. Rather, as provided in the foregoing, they merely set out the elements of a constitutional claim for supervisor liability. In order for "liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir.2005). Plaintiffs' Petition fails to allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible," as required by *Twombly,* 550 U.S. at 547.

*3. Standing*

Fed.R.Civ.P.  Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether or not a person is the proper representative to bring a lawsuit on behalf of a minor child. If the child is

an unemancipated minor, then she lacks judicial capacity, and, for that reason, cannot bring the action on her own. *See* La. Code Civ. Proc. art. 683(A). In such a case, the action will have to be brought on her behalf by her legal  representative, namely, one of her parents, if the child is subject to parental authority, *see* La. Civ. Code  art. 235, or her tutor, if the child is not, *see* La. Code Civ. Proc. arts. 683(B); 4262.

Defendants contend that Plaintiff's Petition contains no allegations "in any form or fashion that Pisauro is the minor child's tutrix or has the procedural capacity necessary to put forth a claim" by McGoldrick, a minor child. In support, defendants cite Plaintiff's allegation in Paragraph 10 of the Petition that McGoldrick had been severely traumatized as a child by her "birth mother." *R. 1, ¶ 10.* While Plaintiffs also allege in Paragraph 13 that McGoldrick asked "Officer Williams to call her mother, Petitioner," such a vague statement does not provide an adequate factual allegation showing that Pisauro possesses the proper procedural capacity to proceed on behalf of the minor child, McGoldrick.

### *Conclusion and Recommendation*

Based on the foregoing analysis, the undersigned concludes that, while Plaintiffs' Petition fails to state some of the alleged claims under Rule 12(b)(6), the remaining claims fall short of the plausibility standard created by *Twombly* and *Iqbal*. Moreover, the Petition is generally vague and ambiguous such that the parties cannot reasonably frame a responsive pleading as required by Rule 12(e). Accordingly, it is the recommendation of the undersigned that the Motion To Dismiss filed by Defendants, the City of Scott, Officer Larry Williams, individually and in his official capacity as a Police Officer for the City of Scott, and Chief Chad Leger, individually and in his official capacity as Chief of Police of the City of Scott [Rec. Doc. 5] be **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that Plaintiffs' (1) ADA, Section 504 and SPED/IDEA claims

12

against all Defendants, (2) Title VI claims against Chief Leger and Officer Williams, in their individual capacities, and (3) § 1983 claims against Chief Leger and Officer Williams, in their official capacities, should be **DISMISSED WITH PREJUDICE**. As to Plaintiffs' remaining claims, the motion should be **DENIED WITHOUT PREJUDICE** to allow Plaintiffs, within **fourteen (14) days** of the entry of the Court's ruling on this report and recommendation, the opportunity to seek leave to amend their Petition to cure the deficiencies as provided in the foregoing analysis; and thereafter, to the rights of the Defendants to reurge their motion to dismiss.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE AND SIGNED this 21st day of March, 2016.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

13