## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE  DIVISION

Pisauro, et al                                                   Civil Action No. 15-02832

versus                                                           Judge Elizabeth E. Foote

Silvia, et al                                        Magistrate Judge Carol B. Whitehurst

### Report and Recommendation

Before the Court is Defendants, Cynthia Silvia ("Silvia") and Candy Tweedel Kelly's ("Kelly"), unopposed Motion To Dismiss pursuant to Federal Rule of Civil Procedure  12(b)(6) [Rec. Doc. 7] and unopposed Motion To Dismiss And Alternative Motion For More Definite Statement [Rec. Doc. 8], against Plaintiff Bobbie McGoldrick Pisauro ("Pisauro"), individually and on behalf of her minor child, Taylor Shae McGoldrick ("McGoldrick") (collectively referred to as "Plaintiffs").

### I. Factual Background

On November 17, 2015, Plaintiffs filed a verified Petition in this action in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana. *R. 1-1.* Defendants removed the suit to this Court on December 12, 2015.  *R.1.* According to the Petition, on November 22, 2014, McGoldrick, a thirteen–year old student at Scott Middle School, was in the classroom of her teacher, Cynthia Silvia. Silvia called the on-campus police officer, Officer Williams, on her cell phone to come to her classroom to "confront" McGoldrick. After arriving at Silvia's classroom, Williams handcuffed McGoldrick and "forced" her into the hallway. Williams then "bumped" her in the back to the front of the school where the buses loaded while cursing at her. Williams refused to allow McGoldrick to call her mother and made her wait in handcuffs until the buses arrived at the school.

After McGoldrick arrived at home, Pisauro went to the City of Scott Police Department and

complained of Williams conduct. Two weeks later, the principal of Scott Middle School, Candy Tweedel Kelly, contacted Pisauro by telephone "to apologize for what had happened." Plaintiffs allege that "no report on the incident" was filed by the Scott Middle School or the Lafayette Parish School Board.

Plaintiffs' specific allegations against McGoldrick's teacher, Silvia, for negligence include: (1) Failure to follow disciplinary protocol; (2) Failure to obtain supervisory consent to call a police officer into the classroom; (3) Failure to advise the school principal of the circumstances; (4) Acting on her own without supervisory advice; (5) Failing to act in a professional manner; (6) Acting vindictively toward a minor student. *R. 1-1, ¶ 25.*

As to their negligence claims against Principal Kelly, Plaintiffs allege: (1) Failure to properly supervise an employee over which she had an obligation and/or authority to instruct; (2) Failure to file a report of the incident; (3) Allowing a campus police officer to use excessive force with students; (4) Failure to timely inform the parent of the affected child; (5) Failure to act in a professional manner; (6) Failure to properly discipline a subordinate over which she had authority.

Plaintiffs allege Defendants' acts caused McGoldrick to suffer irreparable damages including, but not limited to, Post Traumatic Stress Disorder, depression, self-mutilation and reversal of her psychological treatment from the trauma she suffered as a child when her birth mother involved her in a sex trafficking scheme. Plaintiffs also allege Pisauro has suffered marital problems as a result of McGoldrick's psychological problems, "as well as other damages to be proven at the trial of this matter."

*Contentions of the Parties*

In their Motion To Dismiss, *R. 7*, Defendants contend that Plaintiffs' State law negligence claims against them must be dismissed for failure to state a claim because, as school employees, they

have statutory immunity. In their Motion To Dismiss/For More Definite Statement, *R. 8*, Defendants contend Plaintiffs' claims against them should be dismissed based on "the Law and Argument [in] Sections A, B, and D of the Memorandum in Support of Motions ... filed by defendants City of Scott, Officer Larry Williams, Individually and in his Official Capacity as a Police Officer for the City of Scott, and Chief Chad Leger, Individually and in his Official Capacity as Chief of Police of the City of Scott ... [Rec. Doc. 5-1], pages 6-14 and 19-20."[1] *R. 8-1*.  Plaintiffs filed no opposition to the motions.[2] The Fifth Circuit holds that courts may grant an unopposed motion as long as the motion has merit. *See Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

*II. Legal Standards*

*Rule 12(e) Motion for More Definite Statement*

"A Rule 12(e) motion is disfavored. Rule 12(e) provides as follows: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Under the liberal pleading approach of the federal rules, plaintiffs need only make a short and plain statement of the claim showing that they are entitled to relief. *Fed.R.Civ.P. 8(a). Burks v. Bogalusa City School Bd.*, 1999 WL 64947, at *3 (E.D.La.,1999)*.

---

[1] Because the Plaintiffs have filed the same claims against all defendants without distinction and because the School Defendants rely in part on the Police Defendants' briefs, this report and recommendation will be somewhat redundant to the Police Defendants' report and recommendation.

[2] Under Local Rule 7.5, a party's failure to file a response to a motion within the time allowed for (21 days) is construed as non-opposition to the motion.  Any opposition to Defendants' motion was due by January 30, 2016.

*Rule 12(b)(1) and 12(b)(6) Motions to Dismiss*

Motions filed under Rule 12(b)(1)[3] of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). A Rule 12(b)(1) motion to dismiss is the proper method with which to bring a motion to dismiss for lack of standing. *Harrison v. Safeco Ins. Co. of America,* 2007 WL 1244268, at *3 (E.D.La. Jan. 26, 2007) (citing *Ramming,* 281 F.3d at 161). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming,* 281 F.3d at 161. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.*

The standard for review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *Harrison,* 2007 WL 1244268, at *3 . When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *In re Katrina Breaches Litig.* at 205 (quoting *Twombly,* at 555).

---

[3] The Police Defendants' memorandum, Section A, included the Standards of Review for Rule 12(b)(6) and Rule 12(e). *R. 5-1*. Because the School Defendants' motions, like the Police Defendants', also include the issue of standing, the Court included the standard for Rule 12(b)(1).

*III. Analysis*

*A. Statutory Immunity*

Plaintiffs assert allegations of State law negligence claims against Defendants, Silvia and Kelly, "employees of the Lafayette Parish School Board at the time of the incident." *R. 1-1, ¶ 25.* Defendants argue that even assuming *arguendo* that the allegations in Plaintiffs' petition are true, Plaintiffs cannot recover from Defendants because they are entitled to immunity in the course and scope of their employment pursuant to La.R.S. 17:439.

Louisiana Revised Statute section 17:439 provides that "no person shall have a cause of action against any school employee based on any statement made or action taken by the school employee." For the statute to apply, the statement must have been made "within the course and scope of the school employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board." La.Rev.Stat. § 17:439(A). However, the immunity provided by this statute does not apply to statements or actions a school employee makes that were "maliciously, willfully, and deliberately intended ... to harass or intimidate a student." *Id*. at § 17:439(C).

The Louisiana Supreme Court has accordingly held that a school employee may invoke the protections of section 17:439(A) by establishing (1) the cause of action against the employee is based on a statement made or action taken by the employee, (2) the action or statement was made in the course and scope of the employee's duties as defined by the school board, and (3) the action or statement must be within the specific guidelines for school employee behavior as established by the school board. *Credit v. Richland Parish Sch. Bd.*, 85 So.3d 669, 675–76 (La. 2012). The Louisiana Supreme Court determined that, "La. R.S. 17:439(A) precludes a cause of action against school employees for both acts of commission and acts of omission committed, as well as statements made,

5

within the course and scope of their duties as defined by the school board and within the specific guidelines for employee behavior established by that school board." *Credit v. Richland Parish School Bd.*, 92 So.3d 1175, 1178 (La.App. 2 Cir.,2012).

Defendants also assert that as employees of the Lafayette Parish School Board they are immune from suit for discretionary actions performed within the course and scope of their duties pursuant to La. R.S. 9:2798.1. Louisiana Revised Statute section 9:2798.1 grants immunity to public entities, as well as their officers and employees, for discretionary acts performed within the course and scope of their official duties. *Jackson v. State ex rel. Dep't of Corr.*, 785 So.2d 803, 809 (La.2001).

La. R.S. 9:2798.1 provides in pertinent part:

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees ....

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable: (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

LA R.S. 9:2798.1.

Here, the allegations set forth against Silvia and Kelly are all allegations of actions and/or omissions in the course and scope of their employment as a teacher and a principal of the Lafayette Parish School Board. Silvia and Kelly are protected by Louisiana's statute providing qualified personal tort immunity for school employees. The Complaint fails to allege any facts sufficient to

show that either Silvia or Kelly "maliciously, willfully, and deliberately intended to cause bodily harm to a student." Thus, these defendants are immune from state law negligence liability.

*B. Motion to Dismiss*

Plaintiffs' Petition implicates overlapping federal statutes addressing discrimination on the basis of disability. The  related statutory schemes at issue here are: (1) the Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134; and (3) the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400–1491.

*1. Section 504 of the Rehabilitation Act and the ADA*

Plaintiffs  allege in Paragraph 32 of the Petition that all Defendants are liable under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), SPED and the American with Disabilities Act ("ADA"). [ Rec. Doc. 1]. Title II of the ADA simply extends Section 504 to all programs and services provided by state and local governments:

> The first purpose [of title II of the ADA] is to make applicable the prohibition against discrimination on the basis of disability, currently set out in regulations implementing section 504 of the Rehabilitation Act of  1973, to all programs, activities, and services provided or made available by state and local governments or instrumentalities or agencies thereto.

*Hope v. Cortines*, 872 F.Supp. 14, 20-21 (E.D.N.Y.,1995) (citing H.R.Rep. No. 101–485(II), 101st Cong., 2d Sess. 84 (1990)). When a Section 504 claim is made together with a Title II ADA claim, as in this case, most courts consider them together as they provide the same remedies, procedures and rights. 42 U.S.C. § 12133; s*ee Bennett–Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The Fifth Circuit reviews Section 504 claims under the standard applicable to ADA claims. *See, e.g .Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir.2005) (en banc).

"To establish a prima facie case of discrimination under the ADA, [a plaintiff] must

demonstrate: (1) that she is a qualified individual within the meaning of the ADA; (2) that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which [the school district] is responsible; and (3) that such exclusion or discrimination is because of her disability." *Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 292 (5th Cir.2012) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir.2004)). Both ADA claims and claims brought under Section 504 require the three elements listed above with only Section 504 requiring the fourth element that the relevant program or activity be receiving Federal financial assistance. *S.S. v. Eastern Kentucky University*, 532F. 3d 445 (6th Cir. 2008). "The only material difference between the two provisions lies in their respective causation requirements." *Bennett*, 431 F.3d at 454. Section 504 prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "the sole reason" for the challenged action. *Id*. In addition, "[a] plaintiff asserting a private cause of action for violations of the ADA [and the Rehabilitation Act] ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano–Pyle v. Victoria County*, 302 F.3d 567, 575 (5th Cir.2002).

To show disability discrimination in the educational context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." *Bennett*, 431 F.3d at 454. The plaintiff must show "that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir.1983). "[F]acts creating an inference of professional bad faith or gross misjudgment" are necessary to substantiate a cause of action for intentional discrimination under Section 504 or ADA against a school district. *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir.2010); *Bennett*, 431 F.3d at 455. Allegations that educational authorities "exercised professional judgment," even mistakenly, do not

suffice unless they "depart grossly from accepted standards among educational professionals." *Bennett*, 431 F.3d at 454–55. The ADA and Section 504 "do not create general tort liability for educational malpractice." *D.A.*, 629 F.3d at 454.

Plaintiffs' Petition makes only vague remarks as to McGoldrick being "severely traumatized as a child when her birth mother involved her in a sex trafficking scheme" and her "years of psychological treatment and counseling." The Petition, however, includes no specific allegations as to what McGoldrick's claimed disability is, nor are there any allegations to show that McGoldrick was "otherwise qualified" for any Section 504 program. The only allegation which could be considered as addressing any such need is Paragraph 4 which states:

> Despite Petitioner's objections, Defendant Lafayette Parish School Board determined that [McGoldrick] would be placed into a couple of 'regular' classrooms instead of the 'special needs' classrooms she had previously attended.

*R. 1-1,¶ 4.*

The allegations related to Plaintiffs' Section 504 and ADA claims against Silvia and Kelly are vague and ambiguous such that defendants cannot reasonably be required to frame a responsive pleading. Further, the allegations in Plaintiff's Petition fail to state a claim for relief under either Section 504 or the ADA that is plausible on its face.

Plaintiffs also assert in Paragraph 34 of their Petition a cause of action under "SPED". In order to allege a claim for special education and related services ("SPED"), McGoldrick must establish that she has been evaluated and found eligible for one or more of the disabilities listed in the Individuals with Disability Education Improvement Act ("IDEA"). Plaintiffs' Petition provides no factual allegations to support any such entitlement.

Defendants further assert that Plaintiffs have failed to exhaust their administrative remedies under the IDEA. IDEA's exhaustion requirement permits states and local agencies to employ their

educational expertise, "affords full exploration of technical educational issues, furthers development of a complete factual record and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992) (citing *McKart v. United States*, 395 U.S. 185, 193–95 (1969)); *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 112 (2d Cir. 2004) (quoting *Hoeft* at 1303). The failure to exhaust such administrative procedures deprives the court of subject matter jurisdiction. *Hoeft*, 967 F.2d at 1302. Since claims under the Rehabilitation Act are bound by IDEA's exhaustion requirement, *a fortiori*, claims under the ADA should be likewise bound." *Hope*, 872 F.Supp. at 21. "The ADA is bound by IDEA's exhaustion requirement for claims seeking relief available under IDEA despite the fact that a plaintiff generally need not exhaust administrative remedies before pursuing an ADA claim unrelated to IDEA." *Id.*   Plaintiffs' Petition contains no allegation that they have in fact exhausted their administrative remedies under IDEA.

*2. Title VI*

Title VI  provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "[O]nly public and private entities can be held liable under Title VI." *Price ex rel. Price v. La. Dep't of Ed.*, 329 F. App'x 559, 561 (5th Cir.2009).

Here, because only public and private *entities* receiving federal funds can be held liable under Title VI, Plaintiffs have failed to state a Title VI claim against Silvia and Kelly, individually. Thus, the claims against them should be dismissed. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir.2003) ("It is beyond question ... that individuals are not liable under Title VI."); *see also*

*United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1044 n. 9 (5ᵗʰ Cir.1984) (noting that "Title VI requires that the public bodies or private entities receiving the benefits of any such loan refrain from racial discrimination.").

*C. Standing*

For the reasons stated in the Report and Recommendation regarding the Police Defendants' Motion to Dismiss, *R. 5-1*, the Court maintains its decision that Plaintiffs' Petition does not provide adequate factual allegations showing that Pisauro possesses the proper procedural capacity to proceed on behalf of the minor child, McGoldrick. The Court, therefore, provides the following analysis.

The Fed.R.Civ.P. Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether or not a person is the proper representative to bring a lawsuit on behalf of a minor child. If the child is an unemancipated minor, then she lacks judicial capacity, and, for that reason, cannot bring the action on her own. *See* La. Code Civ. Proc. art. 683(A). In such a case, the action will have to be brought on her behalf by her legal representative, namely, one of her parents, if the child is subject to parental authority, *see* La. Civ. Code art. 235, or her tutor, if the child is not, *see* La. Code Civ. Proc. arts. 683(B); 4262.

Defendants contend that Plaintiff's Petition contains no allegations "in any form or fashion that Pisauro is the minor child's tutrix or has the procedural capacity necessary to put forth a claim" by McGoldrick, a minor child. In support, defendants cite Plaintiffs' allegation in Paragraph 10 of the Petition that McGoldrick had been severely traumatized as a child by her "birth mother." *R. 1, ¶ 10.* While Plaintiffs also allege in Paragraph 13 that McGoldrick asked "Officer Williams to call her mother, Petitioner," such a vague statement does not provide an adequate factual allegation

11

showing that Pisauro possesses the proper procedural capacity to proceed on behalf of the minor child, McGoldrick.

*Conclusion and Recommendation*

Based on the foregoing analysis, the undersigned concludes that, while Plaintiffs' Petition fails to state some of the alleged claims under Rule 12(b)(6), the remaining claims fall short of the plausibility standard created by *Twombly* and *Iqbal*. Moreover, the Petition is generally vague and ambiguous such that the parties cannot reasonably frame a responsive pleading as required by Rule 12(e). Accordingly, it is the recommendation of the undersigned that the Motion To Dismiss filed by Defendants, Cynthia Silvia and Candy Tweedel Kelly [Rec. Doc. 7] be **GRANTED** and Plaintiffs' negligence claims against Silvia and Kelly be **DISMISSED WITH PREJUDICE.**

It is further recommended that the Motion To Dismiss And Alternative Motion For More Definite Statement [Rec. Doc. 8] be **GRANTED IN PART** and **DENIED IN PART. GRANTED** in that Plaintiffs' Title VI claims against Silvia and Kelly be **DISMISSED WITH PREJUDICE** and **DENIED WITHOUT PREJUDICE** as to Plaintiffs' remaining claims  to allow Plaintiffs, within **fourteen (14) days** of the entry of the Court's ruling on this report and recommendation, the opportunity to seek leave to amend their Petition to cure the deficiencies as provided in the foregoing analysis; and thereafter, to the rights of the Defendants to reurge their motion to dismiss.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal

12

conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE AND SIGNED this 28th day of March, 2016.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

13